## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SCOTT SHIELDS,** | : | **Civil No. 3:13-CV-1807** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| **Acting Commissioner of** | : | |
| **Social Security,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.     Introduction

This is an action brought under 42 U.S.C. § 405(g) to review the decision of

the Commissioner of Social Security to deny the plaintiff's claim for disability

insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. §§

401-433.  In such cases, in the course of judicial review of a disability determination,

one remedy that is available to the Court is a remand of this action to the

Commissioner pursuant to sentence six of § 405(g), which  provides as follows:

> The court may, on the motion of the Secretary made for good cause
> shown before he files his answer, remand the case to the Secretary for
> further action by the Secretary, and it may at any time order additional
> evidence to be taken before the Secretary, but only upon a showing that
> there is new evidence which is material and that there is good cause for
> the failure to incorporate such evidence into the record in a prior

proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact of his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.

42 U.S.C. §405(g).

Upon a review of the record in this case, we believe that this appeal may present one of those unusual instances in which a sentence six remand to the Commissioner is appropriate since the plaintiff has alleged, without contradiction by the defendant, that there has been a significant, post-hearing medical development which may profoundly affect the assessment of this claim. Specifically, the plaintiff, Scott Shields, sought disability benefits as a result of what he alleged to have been constant, intractable, disabling pain in his right foot and leg following a workplace accident. Shields' claim of disabling pain was supported by the opinion of his treating physician, but was rejected by the Administrative Law Judge as not fully credible or medically supported by treatment records.

The plaintiff now alleges that there has been a medical development following Shields' administrative hearing which casts an entirely new, and materially different, light upon the ALJ's opinion which discounted Shields' claims of pain and his treating physician's opinion that this pain was disabling. According to the plaintiff:

"Subsequent to the testimony [before the ALJ], the plaintiff underwent an amputation of his right leg," in an effort to reduce and alleviate his pain.  (Doc. 9, p. 14.)  In our view, the plaintiff's willingness to undergo the amputation of a limb on the advice of his treating physician in order to alleviate his pain is a new, profound and material medical development, one which casts both the plaintiff's complaints of pain and the treating doctor's opinion regarding the severity of this injury in a dramatic new light. Accordingly, for the reasons set forth below, we will remand this matter to the Commissioner for reconsideration in light of this new evidence.

## II.   Statement of Facts and of the Case

On November 29, 2010, Scott Shields applied for social security disability benefits, alleging that he had become disabled as of July 23, 2004, as a result of a workplace accident which caused severe injuries to his right leg and foot.  (Tr. 115-18, 135.)   The Pennsylvania state agency denied Shields' claim in an initial determination, (Tr. 74-79.), and at Shields' request, an Administrative Law Judge (ALJ) held a hearing on January 9, 2012.  Shields, who was represented by counsel, testified at this hearing, describing the severe, chronic, intractable leg pain that he suffered from as a result of this injury.  (Tr. 33-65.)  Shields' disability claim was also supported by the opinion of his treating physician, Dr. Thomas Jiunta.  Dr. Jiunta,

who had been treating Shields since January 2005, (Tr. 241.), opined that Shields was totally disabled due to this painful leg injury. (Tr. 255.)

Despite this testimony, on March 28, 2012, the ALJ issued a ruling which found finding that Shields could perform a modified range of unskilled, sedentary work including the representative jobs that the vocational expert identified and, therefore, was not disabled. (Tr. 10-19.) In reaching this result, the ALJ specifically concluded that Shields' "statements concerning the intensity, persistence and limiting effects of these [pain] symptoms are not credible to the extent they are inconsistent with [the ALJ's] residual functional capacity assessment." (Tr. 14.) The ALJ also found that Shields' "subjective complaints and limitations regarding pain and functionality are beyond what the objective evidence of record indicates." (Tr. 16.) Finally, the ALJ discounted the opinion of Shields' treating physician, Dr. Jiunta, that Shields could not work due to his injury, holding that this medical treating course opinion was "contrary to the objective findings and diagnostic testing of the record as a whole, which were moderate at worst." (Tr. 17.)

While the ALJ made these adverse credibility determinations regarding the severity of Shields' pain, and the validity of the treating doctor's opinion that this chronic pain was wholly disabling on the basis of the evidentiary record that was then before the ALJ, Shields alleges without contradiction that there has been a material

change in his physical condition following this hearing, a change which casts his

subjective complaints and Dr. Jiunta's opinion in an entirely new light.  According

to the plaintiff:   "Subsequent to the testimony [before the ALJ], the plaintiff

underwent an amputation of his right leg," in an effort to reduce and alleviate his

pain.  (Doc. 9, p. 14.)[1]  Thus, we are now presented with this claim of new evidence,

evidence which suggests that the chronic pain Shields experienced in his right leg

was so persistent and so severe that Shields' physician recommended, and Shields

agreed, to amputate the leg below the knee rather than endure further pain.

It is against this backdrop that we consider the question of whether a remand

is appropriate in this case to reassess the evidence regarding severity of Shields' pain

---

[1]We note that there is no independent medical evidence in the record
confirming this amputation, but also recognize that this is unsurprising since new
evidence, by its nature, would not be contained in the existing administrative
record.  We accept counsel's representation that this medical procedure has
occurred, and recognize that if the defendant believes that we have fundamentally
misapprehended this fact they have legal grounds to move to reconsider this
ruling, since " 'The purpose of a motion for reconsideration ... is to correct
manifest errors of law or fact or to present newly discovered evidence.'  Max's
Seafood Café, 176 F.3d at 677 (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906,
909 (3d Cir.1985)).  'Accordingly, a judgment may be altered or amended if the
party seeking reconsideration shows at least one of the following grounds: . . . the
availability of new evidence that was not available when the court granted the
motion for summary judgment; or . . . the need to correct a clear error of law or
fact or to prevent manifest injustice.'  Id. (citation omitted)."   Howard Hess
Dental Laboratories Inc. v. Dentsply Intern., Inc., 602 F.3d 237, 251 (3d Cir.
2010).

in light of the fact that Shields was willing to amputate his foot in order to alleviate this pain.

### III.   <u>Discussion</u>

#### A.   <u>Judicial Review-New Evidence</u>

In a case such as this, where the record reveals that there was new and additional evidence developed by a claimant following the ALJ hearing, several legal considerations come into play.  42 U.S.C. § 405(g) provides that:  "The court may, . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  Thus, we are empowered by statute to direct a remand to consider new and material evidence.

In exercising this authority, the United States Court of Appeals for the Third Circuit has emphasized that a claimant seeking remand on the basis of new evidence must demonstrate that the additional evidence is both new and material, and that the claimant had good cause for not submitting the evidence to the ALJ for his initial review.  <u>Szubak v. Sec'y of Health and Human Servs.</u>, 745 F.2d 831, 833 (3d Cir. 1984).  Where such criteria are met, the district court may enter what is colloquially

referred to as a "sentence six" remand pursuant to the sixth sentence of 42 U.S.C. § 405(g).

In order for a claimant to prevail on a request for a sentence six remand, the evidence to be considered must first truly be "new evidence" and "not merely cumulative of what is already in the record." Szubak, 745 F.2d at 833.  In this regard, "in order to be new, evidence must not be merely cumulative of what is already in the record.  Szubak, 745 F.2d at 833. However, . . .  the Third Circuit has allowed 'corroborating' evidence to constitute new evidence, id. at 834."  Shuter v. Astrue, 537 F. Supp. 2d 752, 757 (E.D. Pa. 2008).

Second, the evidence must be "material", meaning that it must be "relevant and probative."  Id.  In making this determination, "the materiality standard of § 405(g) requires 'that there be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination.'  Id.  See also Booz v. Secretary of Health and Human Services, 734 F.2d 1378, 1381 (9th Cir.1984); Dorsey v. Heckler, 702 F.2d 597, 604–05 (5th Cir.1983); Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir.1981).  Thus, to secure remand, a claimant must show that new evidence raises a 'reasonable possibility' of reversal sufficient to undermine confidence in the prior decision.  The burden of such a showing is not great.  A 'reasonable possibility,' while requiring more than a minimal showing, need not meet

a preponderance test.  Instead, it is adequate if the new evidence is material and there is a reasonable possibility that it is sufficient to warrant a different outcome." Newhouse v. Heckler, 753 F.2d 283, 287 (3d Cir. 1985).  Further, "[a]n implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.  See Ward v. Schweiker, 686 F.2d 762, 765 (9th Cir.1982)." Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984).

In practice, "[f]our factors must be considered pursuant to this requirement. See, e.g., Newhouse v. Heckler, 753 F.2d 283, 287 (3d Cir.1985).  First, the evidence must be new and not merely cumulative of what is already in the record.  Id. at 287. Second, the evidence must be material, relevant and probative.  Id.  Third, there must exist a reasonable probability that the new evidence would have caused the Commissioner to reach a different conclusion.  Id.  Fourth, the claimant must show good cause as to why the evidence was not incorporated into the earlier administrative record.  Id." Scatorchia v. Comm'r of Soc. Sec., 137 F. App'x 468, 472 (3d Cir. 2005).  However, with respect to this fourth and final factor, a showing of good cause for failing to present the evidence at an earlier stage of the proceedings, "[i]f the evidence involves new factual data, plaintiff's failure to produce that

evidence at the initial hearing or to the Appeals Council will not preclude a remand. See Kane v. Matthews, supra, 583 F.2d at 881-82; Hicks v. Mathews, 424 F.Supp. 8, 9-10 (D.Md.1976); Perez v. Mathews, supra, 411 F.Supp. at 1279-80; Martin v. Richardson, 325 F.Supp. 686, 688-89 (W.D.Va.1971)." Neumerski v. Califano, 456 F. Supp. 979, 981 (E.D. Pa. 1978).

Applying this four-factor test, courts have sustained sentence six remands when a claimant presents medical updates which satisfy the following three criteria: "[1.] The medical reports offered are clearly new in the sense that they were compiled after the Secretary's first decision, and, therefore, they could not have been presented at the hearing. See Ward, 686 F.2d at 764. [2] Nor are the reports merely cumulative of evidence in the record. . . . . [Finally] [t]he reports also appear to corroborate substantially [claimant]'s subjective complaints of great pain." Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984). Therefore, where a claimant's allegations of chronic pain are supported by either new evidence of a subsequent medical diagnosis; see Minor v. Astrue, 574 F.3d 625 (8th Cir. 2009)(remanding where the ALJ's decision to discount the credibility of the claimant's testimony was rendered unsupported by a subsequent/retroactive medical diagnosis of lung cancer and death of the claimant while the appeal was pending), or by new evidence in the form of a subsequent surgical intervention, see Tomlinson v.

9

Astrue, 2012 WL 3867963 (D. Neb. 2012)(remanding for consideration of records from a subsequent surgery that was recommended based on a CT scan performed a few days *before* the ALJ hearing), a sentence six remand is entirely appropriate.

**B.     This Case Will Be Remanded for Consideration of the Plaintiff's Disability Claim in Light of The Reported Amputation of His Right Leg Below the Knee**

Judged against these guideposts, and accepting the plaintiff's representation that Shields' has undergone the amputation of his right leg below the knee following the ALJ hearing, we find that a remand of this matter is appropriate to consider this material, new medical information. In our view this fact, once proven, casts Shields' subjective complaints of pain in an entirely new light since it reveals that this pain was so persistent, severe and intractable that Shields opted to remove his leg rather than continue to suffer the chronic pain caused by this injury. Shields' willingness to undertake this drastic medical procedure certainly "appear[s] to corroborate substantially [claimant]'s subjective complaints of great pain," Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984), and, therefore, justifies reconsideration of the ALJ's initial decision which found that Shields' "statements concerning the intensity, persistence and limiting effects of these [pain] symptoms [we]re not credible to the extent they are inconsistent with [the ALJ's] residual functional capacity assessment." (Tr. 14.)

Furthermore, the fact that Dr. Jiunta, Shields' treating physician, would apparently adopt this medical course of treatment for his patient, the surgical removal of his foot and leg below the knee, casts substantial doubt upon the ALJ's original conclusion that this medical treating course opinion was "contrary to the objective findings and diagnostic testing of the record as a whole, which were moderate at worst." (Tr. 17.) By any standard, amputation cannot be characterized as a "mediate" course of treatment. The ALJ, therefore, should be entitled to reconsider this aspect of its prior ruling in the light of this dramatic new information.

Moreover, we find that this new medical information cannot simply be dismissed as "evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition. See Ward v. Schweiker, 686 F.2d 762, 765 (9th Cir.1982)." Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984). In this regard, we note that a January 2012 medical report from Dr. Jiunta, (Doc. 9-1.), which was also apparently not considered by the ALJ in reaching this initial decision, specifically asserts that the severe chronic foot pain which now appears to have led to the difficult decision to amputate Shields' foot has continued unabated since 2005. Given Dr. Jiunta's report, which expressly ties this new medical development to Shields' longstanding foot injury, this additional, new evidence meets §405(g)'s "implicit materiality requirement . . . that the new evidence

relate to the time period for which benefits were denied . . . ." <u>Szubak v. Sec'y of Health & Human Servs.</u>, 745 F.2d 831, 833 (3d Cir. 1984).  Therefore, a remand of this case is appropriate here.

### IV.    <u>Conclusion</u>

Since all of the criteria for a sentence six remand of this matter are fully met in this case, we will REMAND this case for reconsideration by the Commissioner and IT IS FURTHER ORDERED THAT judgment be entered in favor of the plaintiff and the case marked closed.

An order consistent with this memorandum will be entered separately.

*<u>S/MARTIN C. CARLSON</u>*
Martin C. Carlson
United States Magistrate Judge

Dated: <u>September 4, 2014</u>